**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **GORSS MOTELS, INC.,** | : | **CIVIL CASE NUMBER:** |
| *Plaintiff*, | : | |
| | : | **3:16-cv-01911-VLB** |
| **v.** | : | |
| | : | **August 21, 2017** |
| **SYSCO GUEST SUPPLY, LLC,** | : | |
| **JOHN DOES 1-5,** | : | |
| *Defendants*. | : | |

**MEMORANDUM OF DECISION DENYING MOTION TO DISMISS**
**[DKT. 23]**

Plaintiff Gorss Motels, Inc. brings this putative class action against Defendant Sysco Guest Supply, LLC and John Does 1-5 ("Defendants") for violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. §§ 227, *et seq.* ("TCPA"). Before the Court is Defendants' motion to dismiss for failure to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The Court must now determine whether Defendants' three allegedly unsolicited facsimile (fax) advertisements adequately confer upon Plaintiff Article III standing to bring this suit. For the foregoing reasons, the Court finds that they do confer jurisdiction and accordingly DENIES Defendants' Motion to Dismiss.

I.   **Background**

Under the TCPA, it is "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement. . . ." 47 U.S.C. § 227(b)(1)(C). The TCPA confers a private right of action for persons or entities to

enjoin a violation, recover monetary loss or receive $500 in damages, or both. 47 U.S.C. § 227(b)(3).

According to the Complaint, Defendants have sent unsolicited facsimile advertisements to Plaintiff, including but not limited to three faxes sent in August or September of 2013. [Dkt. 1 ¶ 2]. The faxes "describe the commercial availability or quality of Defendants' products, goods and services." *Id.* These "junk faxes" do not contain the required opt-out language. *Id.* ¶ 3. Plaintiff did not give Defendant prior express invitation or permission to send such faxes to Plaintiff. *Id.* ¶ 13. Defendants allegedly sent "the same and other unsolicited facsimiles with opt-out language identical or substantially similar to the opt-out language of the fax advertisements" to Plaintiff and at least 40 other recipients or sent the advertisements with the required opt-out language but without permission. *Id.* ¶ 14. Plaintiff believes Defendant continues to send these junk faxes. *Id.* ¶¶ 14, 30.

Plaintiff seeks to certify a class that includes those who received faxes from Defendant during the four years prior to the filing of this case. *Id.* ¶ 29. Plaintiff believes that the faxes others received "were and are being done in the same or similar manner." *Id.* ¶ 5. Plaintiff and others from the putative class do not have a reasonable means to avoid receiving unauthorized faxes as fax machines are left on and operative to receive urgent communications. *Id.* ¶ 15. Plaintiff and the putative class do not have an established business relationship with Defendant. *See id.* ¶ 33.

As a result of Defendants' actions, "Plaintiff and the other class members" have (1) lost paper and toner due to the printing of the faxes; (2) experienced the use of

their telephone lines and fax machines in connection with the unsolicited faxes; and (3) wasted time receiving, reviewing and routing the Defendants' unauthorized faxes, which could otherwise be spent on business activities. *Id.* ¶ 34.

II.   Legal Standard

"Federal courts are courts of limited jurisdiction. . . ." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."). In circumstances where a plaintiff lacks Article III standing, a court may not exercise subject matter jurisdiction. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

A "district court must take all uncontroverted facts in the complaint [ ] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings. . . ." *Id.* "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

## III. Discussion

Defendant moves for dismissal solely on the basis that Plaintiff lacks Article III standing to bring suit for a TCPA violation. The Court accordingly shall address this limited issue involving subject matter jurisdiction and will not address the merits of the case.[1]

Under Article III, section 2 of the Constitution, a federal court is limited to jurisdiction over "Cases" and "Controversies." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "'[T]he gist of the question of standing' is whether petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *E.P.A.*, 549 U.S. at 517 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Proper standing requires a three-part showing: that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

---

[1] **Defendants raise in their Reply brief the question of whether the fax advertisements were in fact *solicited*. *See* [Dkt. 31 at 6-9]. To the extent the parties dispute whether the advertisements were solicited or unsolicited, such an issue is more appropriate for summary judgment as it references evidence outside the four corners of the complaint and addresses the merits of the case. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (ruling the Court's review on a Rule 12(b)(6) motion to dismiss "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference").**

1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). The plaintiff bears the burden of properly alleging facts that establish these elements. *Id.*

Defendants' position is that Plaintiff lacks Article III standing for two reasons: (1) it fails to establish a "concrete injury" as required for an "injury-in-fact," and (2) it cannot establish a causal connection between the injuries and the TCPA violations. [Dkt. 26 at 1]. The Court will address these two arguments in turn.

## A. *Injury-In-Fact*

A plaintiff sufficiently alleges an "injury-in-fact" by showing there is "'an invasion of a legally protected interest' that is 'concrete and particularized' and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury is "concrete" when it is "'real,' and not 'abstract,'" or in other words it "actually exist[s]." *Id.* Concrete injuries may be both tangible and intangible, and where the latter is at issue "both history and the judgment of Congress play important roles." *See id.* at 1549. An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way." *Id.* at 1548.

### 1. *Concrete Harm*

As the Supreme Court made clear in *Spokeo*, 136 S. Ct. at 1549, even though tangible harms may be easier to identify, intangible harms can similarly be concrete. The Supreme Court instructed lower courts "to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* "Actions to remedy defendants' invasions of privacy, intrusion upon seclusion,

and nuisance have long been heard by American courts, and the right of privacy is recognized by most states." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Bell v. Survey Sampling Int'l, LLC*, No. 3:15-CV-1666 (MPS), slip op. at 3 ("Invasion of privacy is just such an intangible harm recognized by the common law.").

Courts may look to Congress for guidance when evaluating intangible harms because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Spokeo*, 136 S. Ct. at 1549. Accordingly, Congress has the ability to "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (internal quotation marks and citations omitted). This does not mean that all statutory violations automatically satisfy the injury-in-fact requirement, however, because "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; *see Leyse v. Lifetime Entm't Servs., LLC*, 679 F. App'x 44, 46 (2d Cir. 2017) ("Congress may by statute define and confer upon individuals a legally protected interest, but even in such cases, 'a plaintiff only has standing to sue if she can allege concrete and particularized injury to that interest.'") (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)). In other words, a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. at 1549. A key question of this Motion to Dismiss, therefore, is whether a TCPA violation is more than a "bare procedural violation, divorced from any concrete harm," and instead is, in it of itself, concrete.

The Second Circuit has not had the occasion to address Article III standing in the context of a TCPA fax advertisement case. However, the Eleventh Circuit in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, has had such an opportunity and analyzed the TCPA's legislative history with respect to unsolicited fax advertisements, finding it clear that the statute's "prohibition against sending unsolicited fax advertisements was intended to protect citizens from the loss of the use of their fax machines during the transmission of fax data." 781 F.3d 1245, 1252 (11th Cir. 2015); *see Van Patten*, 847 F.3d at 1043 (addressing Article III standing in a TCPA text messaging case and stating that "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements.") (citing Pub. L. 102-243, § 2, ¶ 12); *c.f. Mejia v. Time Warner Cable Inc.*, Nos. 15-CV-6445 (JPO), 15-CV-6518 (JPO), slip op. at 7 (S.D.N.Y. Aug. 1, 2017) ("The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate.") (quoting *In re Rules & Regs Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7979-80 (2015)). Specifically, the legislative history indicates that fax telemarketing is problematic partly because "it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Palm Beach*, 781 F.3d at 1252 (quoting H.R. REP. NO. 102-317, at 10 (1991)). With Congressional intent in mind, the Eleventh Circuit held that standing was appropriate even though the defendant sent only one unsolicited fax advertisement (which notably occupied the fax machine for only one minute) and

further noted, "This occupation of Plaintiff's fax machine is among the injuries intended to be prevented by the statute and is sufficiently personal or particularized to [the plaintiff] as to provide standing." *Id.* at 1252; *see Van Patten*, 847 F.3d at 1043 ("A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'") (quoting *Spokeo*, 136 S. Ct. at 1549).

The Second Circuit recently addressed Article III standing in a summary order on a TCPA case involving a prerecorded voicemail message. In *Leyse*, the Second Circuit held that the plaintiff's receipt of the voicemail "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing" because the alleged contact is exactly the type of contact from which consumers are protected under the TCPA. *Leyse*, 679 F. App'x at 46. The Second Circuit cited *Palm Beach* as support, leading the Court to conclude that the Second Circuit would find an injury-in-fact to be established by a "one-minute occupation of a fax machine*." Id.* at 47. In addition, the Second Circuit referenced *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) for the principle that "[t]he injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." Recognizing that summary orders are not controlling, it is reasonable to conclude that the Second Circuit would come to the same conclusion as the Eleventh Circuit did in *Palm Beach* were it presented with the issue of standing in an unsolicited fax advertisement case where, in addition to the intrusion, the consumer is forced to incur the costs of the solicitor's marketing expenses.

The Court also finds instructive *Bell v. Survey Sampling Int'l, LLC*, No. 15-CV-1666 (MPS), slip op. at 1 (D. Conn. Mar. 15, 2017), which addressed Article III standing in a case involving the receipt of a robocall in violation of the TCPA. Judge Michael P. Shea held that the plaintiff's answering of a single robocall "is the type of concrete injury-in-fact that has been upheld by the Second Circuit and U.S. Supreme Court." *Id.* at 3. Of particular importance is Judge Shea's distinction between the TCPA and the Fair Credit Reporting Act at issue in *Spokeo*: "Unlike statutes that impose procedures for data management, information verification, or record-keeping to reduce risks of harm, the TCPA prohibits actions that actually harm consumers, however slightly." *Id.* at 4. Judge Shea reasoned that because "[t]he TCPA 'directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA,'" it holds true that a violation of the TCPA would constitute a concrete injury. *Id.* This Court agrees with these principles and finds them applicable to the case at hand.

Defendants argue that the three fax advertisements are *de minimis*, but this is unavailing. Defendant cites several cases to support its contention. *See* [Dkt. 26 at 9-10]. It is true that courts across the country have varied in determining whether a small number of alleged TCPA violations constitute a concrete injury. *Compare Horton v. Southwest Med. Consulting, LLC*, No. 17-CV-0266-CV3-mjx, slip op. at 4 (N.D. Okla. July 10, 2017) ("Defendants argue that paper, ink, and toner are de minimus injuries that do not support Article III standing. However, the question is whether plaintiff has shown a concrete injury, not an injury of a certain magnitude."); *and JWD Automotive, Inc. v. DJM Advisory Grp. LLC*, 218 F. Supp.

3d 1335, 1338-39 (M.D. Fla. 2016) ("Defendants' contention that a junk fax transmission results in <u>de minimis</u> harm insufficient to confer standing under Article III has already been considered—and rejected—by the Eleventh Circuit.") (emphasis in original); *and Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-cv-05486-JCS, slip op. at 8 (N.D. Cal. Feb. 24, 2017) (rejecting the defendants' *de minimis* argument because, as explained in *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1146 (D.N.M. 2016), "Article III requirements for an injury-in-fact do not contain a 'minimum' cost or harm threshold. Regardless of how small the harm is, it is actual and it is real."); *and Nghiem v. Dick's Sporting Goods, Inc.*, 222 F. Supp. 3d 805, 810 (C.D. Cal. 2016) (criticizing the proposition that "a TCPA violation on its own is not sufficient to constitute injury in fact" because of "the specific purpose and history of the TCPA"); *with Smith v. Aitima Med. Equip., Inc.*, No. ED CV 16-00339-AB (DTBx), slip op. at 4 (C.D. Cal. July 29, 2016) (finding in a TCPA phone call case that "[a]ny depletion of Plaintiff's battery, or aggravation and nuisance, resulting from only one call, is a de minimis injury"); *and Sartin v. EKF Diagnostics, Inc.*, No. 16-1816, 2016 WL 3598297, at *3 (E.D. La. July 5, 2016) ("Although Dr. Sartin has plausibly alleged that defendants violated the TCPA by sending unsolicited fax advertisements, he fails to plead facts demonstrating how this statutory violation caused him concrete harm."); *and Supply Pro Sorbents, LLC v. Ringcentral, Inc.*, No. C 16-02113 JSW, 2016 WL 5870111, at *3 (N.D. Cal. Oct. 7, 2016) ("Plaintiff has failed to articulate any unique and concrete injury – beyond merely alleging a statutory violation – that was

caused by the incidental transmission of an identifier at the bottom of a four-page facsimile.").

Indeed, a district court in the District of Massachusetts has already acknowledged the discrepancy between courts. *See Zauderer v. Cirrus Consulting Grp. (USA), Inc.*, No. 16-11742-MPK, ---F. Supp. 3d ---, 2017 WL 3013248, at *3 (D. Mass. July 14, 2017). The court in *Zauderer* held that Article III standing was adequately alleged because "[t]he fax received by plaintiff rendered his fax line unavailable for legitimate business messages while processing the junk fax," which interfered with his privacy interest sought to be protected by the TCPA. *Id.* In so ruling, the court drew upon other courts within its district that had previously "found that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing," but acknowledged that other courts across the country came to a different conclusion: "Plainly, there is no consensus in the courts on this issue. However, having reviewed the case law, the court finds the reasoning of the decisions from this district and others of like mind, to be persuasive." *Id.* The reasoning in *Zauderer* is persuasive to this Court as it comports with the principles established by the Second Circuit in *Leyse* and Judge Shea's application of such principles in *Bell*.

Plaintiff has filed numerous lawsuits asserting what appear to be largely the same facts against different defendants. The Court is also persuaded by the ruling of the district court in the Middle District of Florida denying a motion to dismiss one of Plaintiff's other complaints. In *Gorss Motels, Inc. v. Safemark Sys., LP*, No. 6:16-cv-1638-Orl-31DCI, slip op. at 1 (M.D. Fla. Jan. 5, 2017), the district court found

Gorss to be "complaining of more than just a procedural violation of the TCPA" because it asserted "tangible losses of paper and toner as a result of receiving the unsolicited fax, as well as having its phone line and fax machine tied up, and wasting time receiving, reviewing, and routing the fax." *Id.* at 1. The same language is present in the Complaint here. The district court rejected the Defendants' argument that such violations were *de minimis* because the defendant failed to "establish[ ] a minimum threshold that must be cleared before a tangible harm can be considered for purposes of standing." *Id.*

In summary it is clear there exists ample case law supporting the proposition that the TCPA has created a "legally cognizable interest" in protecting individuals and entities from unwanted faxes, and that the violation of the statute creates a "real" and "not abstract" harm. Denial of standing would effectively negate the congressional intent to protect consumers from the cost, unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements. No one has more incentive to enforce the TCPA and fulfill the congressional intent of the TCPA than the consumer whose privacy is invaded and assets expropriated. By sending unsolicited fax advertisements of its products or services, a solicitor transfers its marketing costs to the unwitting consumer. The solicitor saves itself the cost of duplicating and mailing its marketing material by expropriating the recipient's equipment and materials to market its products. This practice is far more harmful that a unsolicited telephone solicitation. With the congressional intent of the TCPA and aforementioned case law in mind, the Court finds a "concrete" harm has adequately been alleged.

### 1. *Particularized Harm*

Defendant has not briefed the issue of "particularization," and states only that "[b]ecause Plaintiff has not alleged a concrete and particularized injury-in-fact, it lacks Article III standing and the case must be dismissed." [Dkt. 23-1 at 9]. Plaintiff asserts that Defendants' "junk faxes cause Plaintiff and the other recipients to lose paper and toner in the printing of the Defendants' faxes" as well as time for "receiving, reviewing and routing the Defendants' unauthorized faxes." [Dkt. 1 ¶ 34]. The Court finds that the Complaint satisfies the "particularization" requirement because Plaintiff has alleged it personally received three unsolicited fax advertisements in violation of the TCPA, which is sufficient to establish the injury "affect[ed] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.

### B. *Causal Connection*

In addition to establishing an injury-in-fact, a plaintiff must allege that the injury "is fairly traceable to the challenged conduct of the defendant." *Id.* at 1547. This means that there must exist a "causal connection between the injury and the conduct complained of" and cannot arise from an "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560; *see Am. Bird Conservancy v. Harvey*, 232 F. Supp. 3d 292, 305 (E.D.N.Y. 2017) (stating that the traceability requirement "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged . . . conduct, and is in large part designed to ensure that the injury complained of is not the result of the independent action of some third party not before the court.") (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309,

345 (2d Cir. 2009), *reversed on the merits in Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410 (2011)).  The threshold for establishing causation is low as there need only be a "'substantial likelihood' that defendant's actions caused plaintiff's harm."  *DMJ Assocs., L.L.C. v. Capasso*, 288 F. Supp. 2d 262, 272 (citing *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)); *Am. Bird Conservancy*, 232 F. Supp. 3d at 305 (same); *Horton*, slip op. at 4 ("Article III requires 'proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in facts.'") (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)); *see generally Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("While, as we have said, it does not suffice if the injury complained of is th[e] result [of] the independent action of some third party not before the court, that does not exclude injury produced by determinative or coercive effect upon the action of someone else.") (internal quotations marks and citations omitted).

Defendant cites *ARcare v. Qiagen N. Am. Holdings, Inc.*, No. CV 16-7638 PA (ASx), slip op. at 3 (C.D. Cal. Jan. 19, 2017), in support of its argument that the harm is not "fairly traceable" to Defendants' conduct.  In *ARcare*, the district court agreed with the Defendants' contention that "had the faxes fully complied with the TCPA, Plaintiff would have lost the same amount of ink, toner, paper, and time."  *Id.*  The court opined that "Plaintiff does not attempt to show how it was injured by the receipt of faxes with opt-out notices which failed to fully comply with the TCPA, instead alleging harm which would result from the receipt of any fax."  *Id.*  This Court cannot agree with *ARcare.*  It is paradoxical that the court in *ARcare* found that "lost paper, toner, ink, and time, are *sufficiently concrete and particularized*

[to] satisfy Article III's injury in fact requirement," *id.* at 3 (emphasis added), but then held that Plaintiff could not establish a causal connection and that "Plaintiff lacks standing because it has alleged a 'bare procedural violation' which is '*divorced from any concrete harm*' caused by Qiagen's alleged violation of the TCPA." *Id.* at 4. Qiagen's procedural violation seems to have directly caused the concrete harm that the court found to have occurred. *See id.* at 1. It is unclear to the Court how the procedural violation could then be divorced from the concrete harm.

In *Horton,* the district court addressed *ARcare* and observed "the majority of courts have rejected [*ARcare*'s traceability] argument." *Id.*, slip op. at 5 (citing cases). This Court agrees with *Horton*'s analysis that *ARcare* represents an "unjustified narrowing of what constitutes a defendant's 'conduct' . . . impos[ing] a heightened causation requirement that is not supported by case law on standing." *Id.; see Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, slip op. at 5 (N.D. Ind. Dec. 9, 2016) (addressing courts that find the injury is "divorced" from the alleged violation of the TCPA: "This logic confuses the existence of an injury with the availability of a cause of action. The injuries at issue are caused by the placing of unwanted phone calls, as just described. That the TCPA only proscribes such calls when made with auto-dialers or artificial or prerecorded voices does not mean that the existence of an injury for Article III purposes depends on whether those means are used, but only that plaintiffs do not have a cause of action when they are not.").

Moreover the reasoning of *ARcare* is inapposite here. Plaintiff alleges it received multiple faxes. Had Defendant complied with the opt-out requirement of the TCPA, Plaintiff would have been able to avoid the loss and intrusion occasioned by the second and third faxes.

As aforementioned, this Court has relies upon established case law to determine a TCPA violation is "more than a bare [procedural] violation." *See Leyse*, 679 F. App'x at 46. The Complaint clearly states that Defendant sent three unsolicited fax advertisements to Plaintiff. *See* [Dkt. 1 ¶ 11]. The Complaint also states that the advertisements either did not contain proper opt-out language, or if they did then the Defendant did not receive express permission or invitation. *Id.* ¶ 14. Accordingly, such facts are sufficient to allege Defendants' unsolicited fax advertisements sent to Plaintiff violated the TCPA and thus is "traceable" to the alleged harm. There is no indication that an independent action from an unrelated third party caused the harm alleged in the Complaint. Accordingly, the Court finds Plaintiff sufficiently alleged the second prong required for Article III standing.

## IV. Conclusion

For the aforementioned reasons, the Court hereby DENIES Defendants' Motion to Dismiss. The case is to proceed with discovery and the parties shall file their dispositive motions on or before January 31, 2018.

**IT IS SO ORDERED.**

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: August 21, 2017.**